UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

MODESTO ALMONTE, MANUEL CABRERA,
EDWIN HEREDIA, JOSE JIMENEZ, FABIO
LOPEZ, GREGORIO MARTE, FIORDALIZA
RAMIREZ, TIRSO RAMIREZ, GABRIEL PEREZ,
and MANUEL VASQUEZ,

                    Plaintiffs,

                    -against-

JAM MAINTENANCE LLC, 1165 GERARD REALTY
LLC, 1170 GERARD REALTY LLC, BEAUTY
REALTY LLC, SAGAMORE REALTY LLC,
PROSPECT 2000 REALTY LLC, DIEGO RAMIREZ,
ROBERT KASZOVITZ, and AKIVA KASZOVITZ,

                    Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

------------------------------------------------------------------------X

       Plaintiffs Modesto Almonte, Manuel Cabrera, Edwin Heredia, Jose Jimenez, Fabio Lopez, Gregorio Marte, Fiordaliza Ramirez, Tirso Ramirez, Gabriel Perez, and Manuel Vasquez (collectively, "Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of defendants JAM Maintenance LLC, 1165 Gerard Realty LLC, 1170 Gerard Realty LLC, Beauty Realty LLC, Sagamore Realty LLC, Prospect 2000 Realty LLC, Diego Ramirez, Robert Kaszovitz, and Akiva Kaszovitz, (collectively, "Defendants") allege:

## NATURE OF THE ACTION

       2.     Throughout their employment as building porters and superintendents in multi-unit apartment buildings owned by Defendants in the Bronx, New York, Plaintiffs regularly worked up to 70 hours seven days per workweek and were regularly paid below the minimum and overtime wage rates required by law.

       3.     Plaintiffs bring this action to recover unpaid minimum and overtime wages, liquidated damages, pre- and post-judgment interest, injunctive and declaratory relief against Defendants' unlawful actions, and attorneys' fees and costs pursuant to the

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL").

## JURISDICTION

4. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because Plaintiffs were employed at buildings that are located, and owned and operated by Defendants, in the Southern District of New York.

## THE PARTIES

**PLAINTIFFS**

**Modesto Almonte**

6. Modesto Almonte resides in the Bronx, New York.

7. Defendants employed Almonte as a building superintendent at 1165 Gerard Avenue, 1170 Gerard Avenue, and 1183 Gerard Avenue from December 2017 through December 2019.

**Manuel Cabrera**

8. Manuel Cabrera resides in the Bronx, New York.

9. Defendants employed Cabrera as a building superintendent at 2000 Prospect Avenue from in or about June 2016 through December 2016 and at 1295 Grand Concourse from in or about 2017 through October 2021.

**Edwin Heredia**

10. Edwin Heredia resides in the Bronx, New York.

11. Defendants employed Heredia as a building superintendent at 1170 Gerard Avenue and a building porter at 1295 Grand Concourse from June 2021 through October 2021.

**Jose Jimenez**

12. Jose Jimenez resides in the Bronx, New York.

13. Defendants employed Jimenez as a building porter at 1165 Gerard Avenue, 1170 Gerard Avenue, and 1183 Gerard Avenue from November 2019 through September 2020.

**Fabio Lopez**

14. Fabio Lopez resides in the Bronx, New York.

15. Defendants employed Lopez as a building superintendent at 1165 Gerard Avenue, 1170 Gerard Avenue, and 1183 Gerard Avenue from July 2020 through February 2021.

**Gregorio Marte**

16. Gregorio Marte resides in the Bronx, New York.

17. Defendants employed Marte as a building superintendent at 1165 Gerard Avenue, 1170 Gerard Avenue, and 1183 Gerard Avenue from February 2019 through February 2021.

**Fiordaliza Ramirez**

18. Fiordaliza Ramirez ("Fiordaliza") resides in the Bronx, New York.

19. Defendants employed Fiordaliza as a building porter at 1165 Gerard Avenue, 1170 Gerard Avenue, 1183 Gerard Avenue, and 2000 Prospect Avenue from May 2020 through December 2021.

**Tirso Ramirez**

20. Tirso Ramirez ("Tirso") resides in the Bronx, New York.

21. Defendants employed Tirso as a building superintendent at 1165 Gerard Avenue, 1170 Gerard Avenue, and 1183 Gerard Avenue from March 2020 through October 2021.

**Gabriel Perez**

22. Gabriel Perez resides in the Bronx, New York.

23. Defendants employed Perez as a building superintendent at 1170 Gerard Avenue from June 2021 through October 2021.

**Manuel Vasquez**

24. Manuel Vasquez resides in the Bronx, New York.

25. Defendants employed Vasquez as a building porter and handyman at 1165 Gerard Avenue, 1170 Gerard Avenue, 1183 Gerard Avenue, and 1295 Grand Concourse from approximately 2017 through 2019.

**DEFENDANTS**

**1165 Gerard Realty LLC**

26. Defendant 1165 Gerard Realty LLC is a New York corporation that owns, operates, and does business as a multi-unit apartment building located at 1165 Gerard Avenue, Bronx, New York 10452.

**1170 Gerard Realty LLC**

27. Defendant 1170 Gerard Realty LLC is a New York corporation that owns, operates, and does business as a multi-unit apartment building located at 1170 Gerard Avenue, Bronx, New York 10452.

**Beauty Realty LLC**

28. Defendant Beauty Realty LLC is a New York corporation that owns, operates, and does business as a multi-unit apartment building located at 1183 Gerard Avenue, Bronx, New York 10452.

**Sagamore Realty LLC**

29. Defendant Sagamore Realty LLC is a New York corporation that owns, operates, and does business as a multi-unit apartment building located at 1295 Grand Concourse, Bronx, New York 10452.

**Prospect 2000 Realty LLC**

30. Defendant Prospect 2000 Realty LLC is a New York corporation that owns, operates, and does business as a multi-unit apartment building located at 2000 Prospect Avenue, Bronx, New York 10457.

**Robert Kaszovitz**

31. Defendant Robert Kaszovitz ("Robert") is sued individually in his capacity as an owner and manager of 1165 Gerard Realty LLC, 1170 Gerard Realty LLC, Beauty Realty LLC, Sagamore Realty LLC, and Prospect 2000 Realty LLC (collectively, "Defendant Buildings").

32. Robert resides in Brooklyn, New York.

33. Throughout Plaintiffs' employment, Robert was a managing agent of the Defendant Buildings in which Plaintiffs worked and was a person to whom Plaintiffs were ultimately responsible.

34. Robert had the authority to hire and fire employees, and established and exercised authority regarding the pay practices at the Defendant Buildings.

35. For example, Robert denied Almonte's requests for a raise, which he made on at least three occasions, in or about February 2018, June 2018, and January 2019.

36. Robert was actively involved in managing the day-to-day operations of the Defendant Buildings.

37. Robert had the power to stop any illegal pay practices that harmed Plaintiffs but did not do so.

38. Robert exercised sufficient control over the Defendant Buildings to be considered Plaintiffs' employer under the FLSA and NYLL.

**Akiva Kaszovitz**

39. Defendant Akiva Kaszovitz ("Akiva") is sued individually in his capacity as an owner and manager of the Defendant Buildings.

40. Akiva resides in Brooklyn, New York.

41. Throughout Plaintiffs' employment, Akiva was a managing agent of the Defendant Buildings in which Plaintiffs worked and was a person to whom Plaintiffs were responsible.

42. Throughout Plaintiffs' employment, Akiva had the authority to hire and fire employees.

43. Throughout Plaintiffs' employment, Akiva established and exercised authority regarding the pay practices at the Defendant Buildings.

44. For example, Plaintiffs communicated with Akiva when there was a question or concern about rates of pay.

45. Akiva, together with Robert, made final decisions about Plaintiffs' rates of pay.

46. Akiva had the power to stop any illegal pay practices that harmed Plaintiffs but did not do so.

47. Akiva exercised sufficient control over the Defendant Buildings to be considered Plaintiffs' employer under the FLSA and NYLL.

**JAM Maintenance LLC and Diego Ramirez**

48. Defendant JAM Maintenance LLC is a New York Limited Liability company registered to do business in New York State that owns, operates, and does business as JAM Maintenance, a building maintenance and management company.

49. Diego Ramirez ("Diego") owns and operates JAM Maintenance LLC.

50. Diego is sued individually in his capacity as an owner and manager of JAM Maintenance LLC and as manager of the Defendant Buildings.

51. Defendants JAM Maintenance LLC and Diego were employed by Robert and Akiva as managers to supervise and oversee the Plaintiffs and day-to-day activities at the Defendant Buildings.

52. Throughout Plaintiffs' employment, JAM Maintenance LLC and Diego had the authority to hire and fire employees.

53. Throughout Plaintiffs' employment, JAM Maintenance LLC and Diego established and exercised authority regarding the pay practices at the buildings.

54. JAM Maintenance LLC and Diego were actively involved in managing the day-to-day operations of the Defendant Buildings.

55. Diego hired and fired Plaintiffs.

56. Plaintiffs communicated with Diego about schedule changes.

57. Plaintiffs' paychecks were issued by JAM Maintenance LLC and handed to Plaintiffs by Diego.

58. JAM Maintenance LLC and Diego exercised sufficient control over the Defendant Buildings to be considered Plaintiffs' employer under the FLSA and NYLL.

**Defendants Were a Joint Employer**

59. The Defendant Buildings and JAM Maintenance LLC have a high degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

60. Despite operating under separate companies, the Defendant Buildings and JAM Maintenance LLC operated as a single integrated enterprise that jointly employed Plaintiffs at five residential apartment buildings in New York City.

61. The Defendant Buildings and JAM Maintenance LLC constitute an enterprise, as defined by the FLSA, that has employees selling, handling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce.

62. In the three years preceding the filing of this Complaint, the Defendant Buildings and JAM Maintenance LLC had annual gross volume of sales or business revenues, individually and collectively, not less than $500,000.

63. Defendants Robert and Akiva own and operate the Defendant Buildings.

64. Defendant Diego also operates the Defendant Buildings, as well as JAM Maintenance LLC.

65. The Defendant Buildings each has the same New York Department of State service of process address of 1621 51st Street, Brooklyn, New York, 11204.

66. Under the management of the Defendant Buildings and JAM Maintenance LLC, Plaintiffs were regularly transferred between the properties, where they performed the same basic job duties, were subject to the same employment policies, practices and procedures, and were directed and/or permitted to perform work at all locations without retraining.

67. Plaintiffs participated in the integration of operations of the Defendant Buildings and JAM Maintenance LLC locations by, *inter alia*, performing services at multiple buildings in the same day and/or week, and also by transferring supplies between the Defendant Buildings and the JAM Maintenance LLC office at the direction of Diego, Robert, and Akiva.

68. Defendant Diego regularly texted or called Plaintiffs to tell them which Defendant Building to work at that day.

69. Diego, Robert, and Akiva visited each of the Defendant Buildings and spoke with and supervised Plaintiffs while they were working.

70. Defendants paid each Plaintiff in a single check per week, issued by JAM Maintenance LLC, regardless of which of the Defendant Buildings the Plaintiff worked at that workweek.

**FACTUAL ALLEGATIONS**

71. Throughout their employment with Defendants, Plaintiffs were required to work seven days per week.

72. Plaintiffs Almonte, Cabrera, Heredia, Jimenez, Lopez, Marte, Tirso, and Vasquez regularly worked seven days per week from about 7:00 a.m. to 5:00 p.m., for a total of approximately 70 hours per week.

73. Fiordaliza regularly worked seven days per week, Mondays through Saturdays from about 7:00 a.m. to 5:00 p.m. and Sundays from about 9:00 a.m. to 5:00 p.m., for a total of approximately 68 hours per week.

74. Throughout their employment, Plaintiffs took ten or fifteen minute-long breaks when they could, in between the completion of tasks in the buildings, but were expected to be on call and did not have any officially designated break time.

75. Perez regularly worked seven days per week from about 5:00 p.m. to midnight, for a total of approximately 49 hours per week.

76. Defendants did not have a time tracking system in place to accurately record the hours worked by Plaintiffs.

77. Defendants paid Plaintiffs Almonte, Cabrera, Jimenez, Lopez, Marte, and Tirso a weekly salary of $500.

9

78. Defendants paid Fiordaliza a daily salary of $100.

79. Defendants paid Heredia a weekly salary of $400.

80. Defendants paid Perez a weekly salary of $600.

81. Defendants paid Vasquez a daily salary of $120.

82. When Defendants hired Plaintiffs Almonte, Cabrera, Heredia, Lopez, Marte, Tirso, Perez, and Vasquez to work as superintendents, Defendants specifically gave them the title of "superintendent," and each was the only employee with that title in the building where he or she worked.

83. In addition to the hours actively working, Plaintiffs Almonte, Cabrera, Heredia, Lopez, Marte, Tirso, Perez, and Vasquez were required to be on call 24 hours a day, 7 days a week, to deal with any situation or need that arose in the buildings where they worked as superintendents.

84. Regardless of the job title each had, all Plaintiffs performed similar superintendent, porter, handyman, maintenance, and janitorial duties in the Defendant Buildings throughout their employment periods.

85. Plaintiffs' job duties included assisting with tenant needs, handyman work throughout the buildings, sorting and putting the building's garbage and recycling items at the curb for pick-up by sanitation workers, sweeping and mopping the hallways and stairwells of the building, and cleaning the sidewalk.

86. Tenants regularly called upon Plaintiffs to address, *inter alia*, plumbing, electrical, and hot water issues, and Plaintiffs were required to address these complaints.

87. Plaintiffs also performed repairs in tenant apartments and around the buildings.

88. Although each Plaintiff was hired to work at a specific building as a superintendent or porter, Defendants required Plaintiffs to complete repairs and address tenant issues at all the Defendant Buildings as needed.

89. Defendant Diego called Plaintiffs approximately once per week to direct them to work at a different Defendant Building than the one they were currently working at.

90. The buildings that Plaintiffs worked in had a total of 53 to 65 units each.

91. Defendants failed to pay Plaintiffs the applicable minimum wage required by the NYLL and FLSA throughout their employment.

92. In accordance with the NYLL Minimum Wage Order for the Building Service Industry, Defendants were required to pay Plaintiffs Almonte, Cabrera, Heredia, Lopez, Marte, Tirso, Perez, and Vasquez for their services as superintendent a minimum wage rate based on the number of units in the building.

93. Defendants were required by the NYLL Minimum Wage Order for the Building Service Industry to pay at least $10.00 per unit as of December 31, 2018, and Defendants therefore should have paid at least $530 to $650 per week to Plaintiffs Almonte, Cabrera, Heredia, Lopez, Marte, Tirso, Perez, and Vasquez for their work as superintendents as of December 31, 2018.

94. Defendants were required to Plaintiffs Heredia, Jimenez, Fiordaliza, and Vasquez at least the statutory minimum wage rate for their work as porters.

95. Defendants failed to pay Plaintiffs Heredia, Jimenez, Fiordaliza, and Vasquez at least the statutory minimum wage rate, which is currently $15 per hour, for their work as porters.

96. Defendants were also required to pay Plaintiffs at 1.5 times the minimum wage or their regular rate of pay, but failed to do so.

97. Defendants did not furnish Plaintiffs with wage statements with each payment of wages as required by the NYLL.

98. Defendants did not furnish Plaintiffs with wage notices at the time of hiring or when their rates of pay changed that, *inter alia*, accurately reflected their rate or rates of pay and number of hours worked per week, as required by the NYLL.

**FIRST CLAIM**
**(Fair Labor Standards Act – Unpaid Minimum Wage)**

99. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

100. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 206(a) and employed Plaintiffs.

101. Defendants were required to pay to Plaintiffs at least the applicable federal minimum wage rate.

102. Defendants failed to pay Plaintiff Heredia the minimum wages to which he was entitled under the FLSA.

103. Defendants were aware or should have been aware that the practices described in this Complaint are and were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of the Plaintiff Heredia.

104. As a result of Defendants' willful violations of the FLSA, Plaintiff Heredia has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and he is entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (New York Labor Law – Unpaid Minimum Wage)

105. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

106. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting New York State Department of Labor ("NYDOL") regulations, and employed Plaintiffs.

107. Defendants failed to pay Plaintiffs the minimum wages to which they were entitled under the NYLL.

108. In accordance with the NYLL Minimum Wage Order for the Building Service Industry, Defendants were required to pay Plaintiffs Almonte, Cabrera, Heredia, Lopez, Marte, Tirso, Perez, and Vasquez for their services as superintendent a minimum wage rate based on the number of units in the building.

109. In accordance with the NYLL Minimum Wage Order for the Building Service Industry, Defendants were required to Plaintiffs Heredia, Jimenez, Fiordaliza, and Vasquez at least the statutory minimum wage rate for their work as porters.

110. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs the minimum hourly wages they were entitled to by law.

111. As a result of Defendants' violations of the NYLL, Plaintiffs are entitled to recover unpaid wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime Wages)

112. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

113. Defendants are employers and employed Plaintiffs within the meaning of 29 U.S.C. § 201 *et seq.*

114. Defendants are and were required to pay Plaintiffs one and one-half (1½) times their regular hourly rate of pay for all hours worked in excess of forty per workweek pursuant to the overtime wage provisions of 29 U.S.C. § 207, *et seq.*

115. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the FLSA.

116. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

117. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay overtime wages to Plaintiffs.

118. As a result of Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**FOURTH CLAIM**
**(New York Labor Law – Unpaid Overtime Wages)**

119. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

120. Under ("NYDOL") regulations, including 12 N.Y.C.R.R. §§ 141-1.4, Defendants were required to pay Plaintiffs Heredia, Jimenez, Fiordaliza, and Vasquez one and one-half (1 ½) times their regular rate of pay for all hours worked in excess of forty per workweek.

121. Defendants failed to pay Plaintiffs Heredia, Jimenez, Fiordaliza, and Vasquez the overtime wages to which they were entitled to under the NYLL and its supporting regulations.

122. Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiffs Heredia, Jimenez, Fiordaliza, and Vasquez overtime wages.

123. Due to Defendants' willful violations of the NYLL, Plaintiffs Heredia, Jimenez, Fiordaliza, and Vasquez are entitled to recover unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**FIFTH CLAIM**
**(NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements)**

124. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

125. The NYLL and the WTPA, including 12 N.Y.C.R.R. § 141–2.2, require employers to provide employees with an accurate wage statement each time they are paid.

126. Throughout Plaintiffs' employment with Defendants, Defendants paid Plaintiffs without providing them a wage statement at the end of every pay period accurately listing, *inter alia*, the regular and overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL § 195(3).

127. Due to Defendants' violation of NYLL § 195(3), Plaintiffs are entitled to recover statutory damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 198(1-d).

**SIXTH CLAIM**
**(NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices)**

128. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

129. The NYLL and the WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

130. Defendants failed to furnish Plaintiffs at the time of hiring, or whenever their rate of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage including tip, meal, or lodging allowances; the regular payday designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

131. Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover statutory damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 198(1-b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

a. to declare that Defendants have violated the minimum wage provisions of the FLSA and the NYLL;

b. to declare that Defendants have violated the overtime wage provisions of the FLSA and NYLL;

c. to declare that Defendants have violated the wage notice and wage statement provisions of the NYLL's Wage Theft Prevention Act;

d. to declare that Defendants' violations of the FLSA and NYLL were willful;

e. to award Plaintiffs damages for unpaid minimum wages;

f. to award Plaintiffs damages for unpaid overtime wages;

g. to award Plaintiffs statutory damages arising out of Defendants' violations of the WTPA;

h. to award Plaintiffs liquidated damages in an amount equal to twice the total amount of the wages found to be due, pursuant to the FLSA and the NYLL;

i. to award Plaintiffs pre- and post-judgment interest under the FLSA and the NYLL;

j. to award Plaintiffs reasonable attorneys' fees and costs pursuant the FLSA and the NYLL; and

k. to award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
      March 3, 2022

PECHMAN LAW GROUP PLLC

By:    *s/ Louis Pechman*
      Louis Pechman
      Laura Rodriguez
      488 Madison Avenue - 17th Floor
      New York, New York 10022
      pechman@pechmanlaw.com
      rodriguez@pechmanlaw.com
      (212) 583-9500
      *Attorneys for Plaintiffs*