UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X **Case No. 22-cv-01820-JPO**
MODESTO ALMONTE, MANUEL CABRERA,
EDWIN HEREDIA, JOSE JIMENEZ, FABIO
LOPEZ, GREGORIO MARTE, FIORDALIZA
RAMIREZ, TIRSO RAMIREZ, GABRIEL PEREZ,
and MANUEL VASQUEZ,

                               Plaintiffs,

       - against -

JAM MAINTENANCE LLC, 1165 GERARD REALTY
LLC, 1170 GERARD REALTY LLC, BEAUTY
REALTY LLC, SAGAMORE REALTY LLC,
PROSPECT 2000 REALTY LLC, DIEGO RAMIREZ,
ROBERT KASZOVITZ, and AKIVA KASZOVITZ,

                          Defendants.
---------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS 1165 GERARD REALTY
LLC, 1170 GERARD REALTY LLC, BEAUTY REALTY LLC, SAGAMORE REALTY
LLC, PROSPECT 2000 REALTY LLC, ROBERT KASZOVITZ, and AKIVA
<u>KASZOVITZ'S MOTION TO DISMISS AND SUMMARY JUDGMENT</u>**

David Binson, Esq.(DB-4602)
Law Office of David Binson
1060 Quentin Place
Woodmere, NY 11598
Tel: (917) 386-3071
Fax: (212) 257-7032
Email: dbinson@binsonlaw.com

Attorney for Defendants
1165 Gerard Realty LLC, 1170
Gerard Realty LLC, Beauty
Realty LLC, Sagamore Realty
LLC, Prospect 2000 Realty LLC,
Robert Kaszovitz and Akiva
Kaszovitz

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................ii

PRELIMINARY STATEMENT............................................1

ARGUMENT ......................................................3

    I.   LEGAL STANDARD FOR MOTION TO DISMISS.................3

    II.  LEGAL STANDARD FOR SUMMARY JUDGMENT..................4

    III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
         AGAINST THE BUILDING DEFENDANTS AND THE KASOVITZ
         DEFENDANTS SINCE PLAINTIFFS' CONCLUSORY ALLEGATIONS
         FAIL TO MEET THE FORMAL CONTROL TEST, FUNCTIONAL
         CONTROL TEST OR SINGLE INTEGRATED ENTERPRISE TEST.....6

    IV.  THE AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST
         THE KASOVITZ DEFENDANTS SINCE PLAINTIFFS MAKE
         NOTHING MORE THAN CONCLUSORY ALLEGATIONS AGAINST
         THESE DEFENDANTS, THEREBY FAILING TO SATISFY THE
         CARTER TEST.........................................20

    V.   PLAINTIFFS' NYLL CLAIMS SHOULD ALSO BE DISMISSED
         FOR FAILURE TO STATE A CLAIM SINCE: A) THE ANALYSIS
         THAT APPLIES TO THE FLSA CLAIMS ALSO APPLIES TO THE
         NYLL CLAIMS; AND B) THIS COURT SHOULD DECLINE
         SUPPLEMENTAL JURISDICTION OVER THE NYLL CLAIMS IN
         LIGHT OF THE FACT THAT THE FLSA CLAIMS ARE SUBJECT
         TO DISMISSAL........................................22

    VI.  THE BUILDING DEFENDANTS' AND KASOVITZ DEFENDANTS'
         MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AND
         THE AMENDED  COMPLAINT SHOULD DISMISSED IN ITS
         ENTIRETY............................................23

CONCLUSION ...................................................24

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Incorporated, 477 U.S. 242, 106
  Southern Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . . . . . . 5

Apolinar v. R.J. 49 Restaurant., LLC 2016 U.S. District LEXIS
  65733 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010) . . . . 3

Ashcroft v. Iqbal, 556 U.S. 662, 129 Southern Ct. 1937, 173 L.
  Ed. 2d 868 (2009) . . . . . . . . . . . . . . . . . . . . . 3, 8

Barfield v. N.Y.C. Health and Hosps. Corporation, 537 F.3d 132
  (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . 7, 20

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 Southern
  Ct. 1955, 167 L. Ed. 2d 929 (2007). . . . . . . . . . . 3, 4, 8

Bravo v. Established Burger One LLC, 2013 U.S. District LEXIS
  146237. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Britton v. Bronx Parent Housing Network, Incorporated, 2022 U.S.
  District LEXIS 169098, 2022 WL 4332735 (S.D.N.Y. Sept. 19,
  2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Cannon v. Douglas Elliman, LLC, 2007 U.S. District LEXIS 91139,
  2007 WL 4358456 . . . . . . . . . . . . . . . . . . . . . . . 21

Carter v. Dutchess Community College, 735 F.2d 8 (2d Cir.
  1984) . . . . . . . . . . 6, 7, 8, 14, 15, 16, 17, 18, 19, 20, 21

Celotex Corporation v. Catrett, 477 U.S. 317, 106 Southern Ct.
  2548, 91 L. Ed. 2d 265 (1986) . . . . . . . . . . . . . . . . 4

Chui-Fan Kwan v. Sahara Dreams Company II Incorporated, Number 17
  Civ. 4058, 2018 U.S. District LEXIS 213782, 2018 WL 6655607  18

Cook v. Arrowsmith Shelburne, Incorporated, 69 F.3d 1235 (2d Cir.
  1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D'Amico v. City of New York, 132 F.3d 145 (2d Cir. 1998). . . . . 4

Diaz v. Consortium for Worker Educational., Incorporated, 2010
  U.S. District LEXIS 107722, 2010 WL 3910280 . . . . . . . . 21

-ii-

Goldberg v. Whitaker House Cooperative, 366 U.S. 28, 81 Southern
Ct. 933, 6 L. Ed. 2d 100 (1961) . . . . . . . . . . . . . 20

Herman v. RSR Sec. Servs., Limited, 172 F.3d 132 (2d Cir. 1999)
. . . . . . . . . . . . . . . . . . . . . . . 6, 7, 20

Huer Huang v. Shanghai City Corporation, 459 F. Supp. 3d. . . . 8

Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013). . . . 6, 20

Jones v. Denver Post, 203 F.3d 748 (10th Cir. 2000) . . . . . . 5

Lotes Company v. Hon Hai Precision Industry Company, 753 F.3d 395
(2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . 3

Lujan v. National Wildlife Federation, 497 U.S. 871, 110 Southern
Ct. 3177, 111 L. Ed. 2d 695 (1990). . . . . . . . . . . . 5

Matsushita Elec. Indus. Company v. Zenith Radio Corporation, 475
U.S. 574, 106 Southern Ct. 1348, 89 L. Ed. 2d 538 (1986). . . 4

McHenry v. Fox News Network, LLC, 510 F. Supp. 3d . . . . . . . 8

Raskin v. Wyatt Company, 125 F.3d 55 (2d Cir. 1997) . . . . . . 5

Sarit v. Westside Tomato, Incorporated, 2020 U.S. District LEXIS
67074, 2020 WL 1891983 (S.D.N.Y. April 16, 2020). . . . . . 20

Shukla v. Viacom Incorporated, Number 18 Civ. 3522, 2019 U.S.
District LEXIS 73680, 2019 WL 1932568 . . . . . . . . . . . 8

Trevino v. Celanese Corporation, 701 F.2d 397 (5th Cir. 1983) . 8

Xue Lian Lin v. Comprehensive Health Management 2009 U.S.
District LEXIS 29779, 2009 WL 976835 (S.D.N.Y. April 9, 2009)
. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Xue Lian Lin v. Comprehensive Health Management., Incorporated,
2009 U.S. District LEXIS 29779, 2009 WL 976835. . . . . . . 21

Yongfu Yang v. An Ju Home, 2020 U.S. District LEXIS 116319, 2020
WL 3510683 (S.D.N.Y. Jun 29, 2020). . . . . . . . 6, 7, 18, 22

Zheng v. Liberty Apparel Company, 355 F.3d 61 (2d Cir.
2003) . . . . . . . . . . . . . . . . 6, 7, 8, 14, 17, 19

Zhong v. August August Corporation, 498 F.Supp. 2d 625 (S.D.N.Y.
2007) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Zimnicki v. Krysiak Construction Corporation, 2022 U.S. District
    LEXIS 166317. . . . . . . . . . . . . . . . . . . . . . . 20

**STATUTES**

29 U.S.C. § 203(d). . . . . . . . . . . . . . . . . . . . . . 13

Educ. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . 5

**PRELIMINARY STATEMENT**

Defendants 1165 GERARD REALTY LLC, 1170 GERARD REALTY LLC, BEAUTY REALTY LLC, SAGAMORE REALTY LLC, PROSPECT 2000 REALTY LLC (the "Building Defendants"), ROBERT KASZOVITZ and AKIVA KASZOVITZ (the "Kasovitz Defendants"), by their attorney David Binson, Esq., submit this Memorandum of Law in support of their motion to dismiss Plaintiffs' First Amended Complaint: a) Pursuant to FRCP §12(b)(6) for failure to state a claim upon which relief can be granted; b) Pursuant to FRCP §§12(b)(2), (4) and (5) since Plaintiffs failed to serve the Kasovitz Defendants by the September 16, 2022 deadline set by this Court; or, in the alternative, c) Summary judgment in favor of Building Defendants and Kasovitz Defendants pursuant to FRCP §§12(d) and 56 of the Federal Rules of Civil Procedure.

On or about March 3, 2022, Plaintiffs commenced this suit by filing the complaint (Docket No. 1). The Defendants filed motions to dismiss/summary judgment to dismiss the complaint (Docket Nos. 46-56). On or about December 16, 2023, Plaintiffs filed their First Amended Complaint (the "Amended Complaint"), which alleges causes of action under FLSA and NYLL for unpaid minimum and overtime wages (Amended Complaint, Docket No. 60, and attached as Exhibit 1 to the Declaration of David Binson, dated February 6, 2023 (the "Binson Declaration")). Plaintiffs allege, inter alia, that Building Defendants and Kasovitz Defendants are joint employers with Defendant Jam Maintenance LLC ("Jam") (Amended

-1-

Complaint, generally).    As  demonstrated  below,  Plaintiffs'
boilerplate  and  conclusory  allegations  lack  specific  factual
allegations to state a claim that Defendants are joint employers or
a single integrated entity.

In  addition,  Plaintiffs  failed  to  serve  the  Kasovitz
Defendants by the September 16, 2022 deadline set by this Court.

**ARGUMENT**

**I. LEGAL STANDARD FOR MOTION TO DISMISS**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

When considering a motion to dismiss for failure to state a cause of action, a district court "accepts all factual claims in the complaint as true and draws all reasonable inferences in the plaintiff's favor." Lotes Co. v. Hon Hai Precision Industry Co., 753 F.3d 395, 403 (2d Cir. 2014) (internal quotations omitted). This tenet, however, is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level . . . i.e., enough to make the claim plausible." Arista Records, LLC v. Doe 3,

604 F.3d 110, 120 (2d Cir. 2010) (internal quotations omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, a court can grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted). If the movant successfully does this, the burden shifts to the opposing party to "offer some hard evidence showing that its version of the events is not wholly fanciful." See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)

(internal quotation marks omitted). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When deciding a motion for summary judgment, "'[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Id.

In addition, to survive summary judgment, the nonmoving party must go beyond the pleadings and establish, through "specific facts," that there is a genuine issue of material fact that must be resolved by a trier of fact. Fed. R. Civ. P. 56(e); Jones v. Denver Post, 203 F.3d 748, 756 (10th Cir. 2000). Conclusory allegations and self-serving affidavits are not sufficient. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990); Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("The plaintiff could not rest on his allegations of a conspiracy to get to a jury without any significant probative evidence tending to support the complaint").

III. **THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE BUILDING DEFENDANTS AND THE KASOVITZ DEFENDANTS SINCE PLAINTIFFS' CONCLUSORY ALLEGATIONS FAIL TO MEET THE FORMAL CONTROL TEST, FUNCTIONAL CONTROL TEST OR SINGLE INTEGRATED ENTERPRISE TEST**

In <u>Yongfu Yang v. An Ju Home</u>, 2020 U.S. Dist. LEXIS 116319, 2020 WL 3510683 (S.D.N.Y. Jun 29, 2020), this Court set forth the criteria to determine who qualifies as an employer under FLSA using the formal control and functional control tests. Specifically, this Court stated:

> To successfully state an FLSA claim for unpaid wages or overtime compensation, a plaintiff must allege, among other things, that she was the defendant's employee. See <u>Zhong v. August August Corp.</u>, 498 F.Supp. 2d 625, 628 (S.D.N.Y. 2007). Courts in this Circuit employ two primary tests in this context in order to determine whether a defendant was the employer of an FLSA plaintiff: a "formal control" test, see <u>Carter v. Dutchess Cmty. Coll.</u>, 735 F.2d 8, 12 (2d Cir. 1984), and a "functional control" test, see <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 72 (2d Cir. 2003). Employment for FLSA purposes is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances," and courts look to the "economic reality of an employment relationship." <u>Irizarry v. Catsimatidis</u>, 722 F.3d 99, 104-105 (2d Cir. 2013) (internal quotation marks and citations omitted). "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question." <u>Herman v. RSR Sec. Servs., Ltd.</u>, 172 F.3d 132, 139 (2d Cir. 1999).
>
> A court must "look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA." <u>Zheng</u>, 355 F.3d at 69. Thus, courts must not only analyze whether an entity is an employer under the <u>Carter</u> test, but also must apply the <u>Zheng</u> test to determine whether an entity, even if does not exert formal control over a worker, nonetheless exerts functional control over the worker and thus acts as an employer for purposes of the FLSA. <u>Id</u>. There is "no rigid rule for the identification of an FLSA employer," but rather the

-6-

determination of the relevant factors in any given case must be made "on a case-by-case basis." <u>Barfield v. N.Y.C. Health & Hosps. Corp.</u>, 537 F.3d 132, 141-143 (2d Cir. 2008).

1. <u>Carter</u> Formal Control Test

Four factors help shape the Carter formal control test: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Carter</u>, 735 F.2d at 12 (citation omitted). However, "[n]o one of the four factors standing alone is dispositive." <u>Herman</u>, 172 F.3d at 139 (citation omitted).

. . .

2. <u>Zheng</u> Functional Control Test

In <u>Zheng</u>, the Second Circuit outlined six factors courts may use in order to determine whether an entity exercises "functional control over workers even in the absence of . . . formal control." 355 F.3d at 72. Courts assess (1) whether the alleged employer's equipment and premises were used for the workers' labor, (2) whether the workers' labor could "shift as a unit from one putative joint employer to another," (3) whether workers performed "discrete line-job" work integral to the alleged employer's production process, (4) whether a subcontractor could pass responsibility to another subcontractor "without material changes," (5) the degree to which the alleged employer supervised the workers' labor, and (6) whether the workers labored exclusively or predominantly for the alleged employer. <u>Id</u>. Courts need not find that every factor weighs against a finding of an employer-employee relationship to find that such a relationship does not exist. See <u>id</u>. at 76-77.

See <u>Yongfu Yang</u>, at 7-8 and 11-12.

This Court also used the single integrated enterprise test to determine whether an employer is liable under FLSA. In <u>Britton v. Bronx Parent Hous. Network, Inc.</u>, 2022 U.S. Dist. LEXIS 169098,

2022 WL 4332735 (S.D.N.Y. Sept. 19, 2022), this Court stated:

> For the City of New York to be Britton's employer under the single employer doctrine, it must be the parent of BPHN such that the two represent "a single, integrated enterprise." <u>Shukla v. Viacom Inc.</u>, No. 18 Civ. 3522, 2019 U.S. Dist. LEXIS 73680, 2019 WL 1932568, at 6 (S.D.N.Y. May 1, 2019). To determine whether a parent and subsidiary constitute a single employer, the Second Circuit has adopted a four-part test, examining "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." <u>Cook v. Arrowsmith Shelburne, Inc.</u>, 69 F.3d 1235, 1240 (2d Cir. 1995). Of these factors, the most "critical" is the second: centralized control of labor. <u>Id</u>. at 1240-41. Indeed, the Circuit has stated that "the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" Id. (quoting <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397, 404 (5th Cir. 1983)).

See also <u>Huer Huang v. Shanghai City Corp.</u>, 459 F. Supp. 3d 580, at 586 (S.D.N.Y. May 11, 2020); <u>Apolinar v. R.J. 49 Rest., LLC</u> 2016 U.S. Dist. LEXIS 65733 at 10-11 (S.D.N.Y. May 18, 2016).

"[c]onclusory, ipse dixit assertions about the degree of control" exercised between two entities "do not satisfy the pleading standards as articulated in <u>Twombly</u> and <u>Iqbal</u>." See <u>Britton v. Bronx Parent Hous. Network, Inc.</u>, 2022 U.S. Dist. LEXIS 169098, 2022 WL 4332735 at 9 (S.D.N.Y. Sept. 19, 2022), quoting <u>McHenry v. Fox News Network, LLC</u>, 510 F. Supp. 3d 51, at 82 (S.D.N.Y. Dec. 18, 2020) (citations omitted).

As demonstrated below, Plaintiffs' complaint fails to satisfy the <u>Carter</u> formal control test, the <u>Zheng</u> functional control test, or the single integrated employer test.

Plaintiffs make the following allegations in relevant part in connection with the Defendants purportedly being joint employers of Plaintiffs:

Robert Kaszovitz

. . .

32. Throughout Plaintiffs' employment, Robert was a managing agent of the Defendant Buildings in which Plaintiffs worked and was a person to whom Plaintiffs were ultimately responsible.

33. Robert had the authority to hire and fire employees at the Defendant Buildings, including Plaintiffs, and established and exercised authority regarding the pay practices at the Defendant Buildings.

34. For example, prior to ending his employment with Defendants in late 2019, Almonte complained on several occasions to his direct supervisor, Diego Ramirez, about the amount he was paid. Each time, Diego Ramirez responded by telling Almonte that he would talk to his "bosses," building owners Robert and Akiva Kaszovitz, because they ultimately decided how much workers at the Defendant Buildings were paid.

35. Robert was actively involved in managing the day-to-day operations of Plaintiffs' work duties performed for the Defendant Buildings.

36. For example, in approximately October 2018, a meeting was held for the tenants of 1183 Gerard Avenue to discuss their grievances with how the building was being maintained. In attendance were Robert, Diego Ramirez, Almonte, and several residents of 1183 Gerard Avenue. After hearing multiple complaints on how the current building superintendent was not adequately addressing the tenants' needs, Robert turned to Diego Ramirez and ordered him to staff Almonte at 1165 Gerard Avenue, 1170 Gerard Avenue, and 1183 Gerard Avenue as the sole superintendent in those buildings. Diego Ramirez complied with Robert's instruction.

37. For example, in approximately September 2019, at Robert's direction through Diego Ramirez, Vasquez was

–9–

tasked with repairing and painting a wall inside of a tenant's unit at 1295 Grand Concourse. A few days after finishing the work, Diego Ramirez informed Vasquez that Robert was not satisfied with the outcome and ordered that Vasquez redo the work. Vasquez complied.

38. For example, throughout Cabrera's employment, Robert would personally direct Cabrera's work duties whenever Diego Ramirez was out of the country. Robert would task Cabrera with collecting rent payments from tenants and provide them receipts for these payments, checking apartment units for unauthorized pets, responding to tenant complaints, and finishing work orders. For example, in April 2021, Diego Ramirez left the country for the week leading up to and including the Easter holiday. Robert called Cabrera directly during Diego Ramirez's absence and ordered him to collect the rent from the tenants at 1295 Grand Concourse and to respond to a tenant maintenance request at an apartment in the basement level of 1295 Grand Concourse.

39. Robert and Akiva Kaszovitz had the authority to modify how the Plaintiffs were paid.

40. Robert and Akiva Kaszovitz had the power to terminate Plaintiffs' employment by, for example, directing Diego Ramirez not to schedule them to work at specific Defendant Buildings.

41. Robert and Akiva Kaszovitz had the power to terminate Diego Ramirez's working relationship with the Defendant Buildings, thereby also terminating Plaintiffs' employment.

42. Robert exercised sufficient control over the Defendant Buildings to be considered Plaintiffs' employer under the FLSA and NYLL.

¶¶32-42, Amended Complaint.

Akiva Kaszovitz

. . .

45. Throughout Plaintiffs' employment, Akiva was a managing agent of the Defendant Buildings in which Plaintiffs worked and was a person to whom Plaintiffs were responsible.

46. For example, in approximately August 2021, Diego Ramirez tasked Perez with repairing the two front doors of 1170 Gerard Avenue. When Perez arrived at the building's entrance to begin working, Akiva was already there. Akiva remained there throughout Perez's work and, after the job was done, inspected the doors to ensure they were adequately repaired.

47. For example, Akiva supervised Lopez while he repaired the bathroom of unit N2 at 1170 Gerard Avenue in approximately January 2021.

48. For example, Akiva directed Tirso's work when Diego Ramirez would leave the country. During these periods when Diego Ramirez was absent, Akiva would personally call Tirso by phone to assign his work duties.

49. For example, Akiva would regularly instruct Plaintiffs Almonte, Tirso, Fiordaliza, Cabrera, and Marte to collect rent from tenants of the Defendant Building properties and provide them receipts of payment. Akiva would then coordinate with these Plaintiffs to pick up the rent payments from them.

50. For example, Diego Ramirez would tell Perez that he would need to confirm with the building owners, Robert and Akiva Kaszovitz, before any decisions involving ongoing projects could be made. This included confirming whether construction materials and tools could be ordered, whether alterations to the project plans could be made, and when work would start.

51. For example, when Lopez was fired from his live-in building superintendent position at 1170 Gerard Avenue in February 2021, Akiva approached him that evening and told him in Spanish that "since we fired you, I will pay you $3,500 to leave the apartment by tomorrow evening so that the super replacing you can move in."

52. For example, while working at 1183 Gerard Avenue, Marte complained to Diego Ramirez about his pay in approximately September 2020. Diego Ramirez responded by saying that he could do nothing about the pay because he, like Plaintiffs, was also an employee of building owners Akiva and Robert, and that they ultimately decided how much Marte and other employees at the Defendant Building properties were paid.

53. For example, when Fiordaliza and Tirso complained to Diego Ramirez about their pay in approximately July 2021, he told them that the amount they were paid came directly from what the building owners Robert and Akiva paid him along with  a small contribution from his own pocket. Diego Ramirez also stated that he could not pay them and other employees at the Defendant Building properties more without the building owners deciding to increase their pay.

54. For example, in approximately July 2018, Almonte complained to Akiva directly about the amount he was paid, to which Akiva responded that he would speak to Diego Ramirez to see what could be done.

55. Akiva exercised sufficient control over the Defendant Buildings to be considered Plaintiffs' employer under the FLSA and NYLL.

¶¶45-55, Amended Complaint.

Defendants Were a Joint Employer

66. In the six years prior to the commencement of this action, Defendant Buildings and JAM Maintenance LLC have had a high degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

67. Despite operating under separate companies, the Defendant Buildings and JAM Maintenance LLC operated as a single integrated enterprise that jointly employed Plaintiffs at five residential apartment buildings in New York City.

68. Upon information and belief, JAM Maintenance LLC does not perform work for any other locations or entities other than the Defendant Building properties.

69. Plaintiffs worked solely at the Defendant Building properties and were not transferred or interchanged to work at any other properties.

70. All of the Defendant Buildings share the same New York Department of State service of process address of 1621 51st Street, Brooklyn, New York, 11204.

71. Defendants Robert and Akiva own and/or operate the Defendant Buildings.

72. Defendants Robert and Akiva regularly visited the Defendant Building properties throughout Plaintiffs' respective employment periods.

73. Defendants Robert and Akiva determined how much Plaintiffs were compensated.

74. Defendants Robert and Akiva directed and supervised the Plaintiffs' work at the Defendant Building properties, either through direct communication with and supervision of Plaintiffs or through Plaintiffs' direct supervisor, Defendant Diego.

75. Defendant Diego also operates the Defendant Buildings, as well as JAM Maintenance LLC.

76. Defendant Diego would himself be directed and supervised by Defendants Robert and Akiva.

77. Under the management of the Defendant Buildings and JAM Maintenance LLC, Plaintiffs were regularly transferred between the Defendant Building properties, where they performed the same basic job duties, were subject to the same employment policies, practices, and procedures, and were directed and/or permitted to perform work at all locations without retraining.

78. Defendants paid each Plaintiff in a single check per week, issued by JAM Maintenance LLC, regardless of which of the Defendant Buildings the Plaintiff worked at that workweek.

79. The Defendant Buildings and their owners, Robert and Akiva, provided mandatory direction to the Plaintiffs as to where, when, and how their daily work functions were completed. By adhering to these instructions and directions, Plaintiffs were acting in the interest of the Defendant Buildings and their individual owners.

80. Section 3(d) of the FLSA defines an employer to "include any person acting, directly and indirectly, in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

81. Under the FLSA, multiple "employers" may qualify as

a "Joint Employer." The economic reality of the Defendant Building's relationship, along with that of their individual owners, with JAM Maintenance LLC mandates that they be treated as Joint Employers.

82. The Defendant Buildings and JAM Maintenance LLC constitute an enterprise, as defined by the FLSA, that has employees selling, handling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce.

83. In each of the three years preceding the commencement of this Action, the Defendant Buildings and JAM Maintenance LLC combined had an annual gross volume of sales or business revenues not less than $500,000.

84. In each of the three years preceding the filing of this Action, each individual Defendant Building has had an annual gross volume of sales or business revenues in excess of $500,000.

85. Plaintiffs participated in the integration of operations of the Defendant Buildings and JAM Maintenance LLC locations by, inter alia, performing services at multiple buildings in the same day and/or week, and also by transferring supplies between the Defendant Buildings and the JAM Maintenance LLC office at the direction of Diego, Robert, and Akiva.

¶¶66-85, Amended Complaint.

At the outset, the purported examples Plaintiffs raise in the Amended Complaint fail to meet the <u>Carter</u> or <u>Zheng</u> tests. Specifically, as demonstrated below, Plaintiffs allegations regarding Robert Kasovitz are without merit since:

a. ¶34 of the Amended Complaint fails to establish that either the Building Defendants or Kasovitz Defendants determined Plaintiffs' rate of pay. The allegation is conclusory, wholly based on hearsay, only mentions interactions between Diego Ramirez of Jam and one Plaintiff, Almonte, and not a single specific

interaction with Building Defendants or Kasovitz Defendants.  In fact, Plaintiffs acknowledge that "[t]hroughout their employment, Plaintiffs were paid in checks issued by JAM Maintenance LLC and distributed by Diego" (¶62, Amended Complaint) indicating that Jam, Plaintiffs' employer, controlled rate and method of payment;

b.   ¶36 of the Amended Complaint fails to establish that either the Building Defendants or Kasovitz Defendants controlled employee work schedules or conditions of employment.  This example only discusses one instance with one Plaintiff, Almonte, and is consistent with Robert Kasovitz, a member of the Building Defendant, discussing building issues with its management company Jam, and requesting that Jam respond to tenant complaints/building issues;

c.   ¶37 of the Amended Complaint fails to establish any of the Carter criteria.  First, the statement "at Robert's direction through Diego Ramirez" indicates that Defendant Ramirez directly instructed Vasquez.  There is no allegation that Robert Kasovitz instructed Vasquez.  Second, this is an example of a building owner being dissatisfied with work at the building, and appropriately complaining to the management company.  Complaining about poor workmanship should not create employer status;

d.   ¶38 suggests an exception rather than the rule.  To wit, it references a limited instance when "in April 2021, Diego Ramirez left the country for the week leading up to and including the

Easter holiday", Robert Kasovitz purportedly asked one plaintiff, Cabrera, to collect rents once, and address a maintenance issue at one unit, once.  It does not demonstrate the requisite supervision or control;

e.   ¶41 of the Amended Complaint fails to establish any of the <u>Carter</u> criteria.   A building owner's termination of its relationship with a management company, should not thereby create employer status between the building owner and the management company's employees.  In any event, Plaintiff has failed to allege that such a termination occurred.

Similarly, as demonstrated below, Plaintiffs allegations regarding Akiva Kasovitz are also meritless:

a.   ¶46 fails to allege an interaction between Perez and Akiva Kasovitz.   Plaintiffs should not be permitted to create employer status for Defendant Buildings and the Kasovitz Defendants based solely upon an allegation that Akiva Kasovitz was merely present when one of the Plaintiffs was working, without any allegation regarding supervision or control.  Also, Akiva Kasovitz purportedly checking to see if the front doors worked should not create employer status;

b.   ¶47 also fails to allege any interaction between Akiva Kasovitz and Perez, or to explain how Akiva allegedly supervised the work.  This is yet another conclusory allegation;

c.   ¶48 alleges an exception rather than the rule since it

references a limited circumstance "when Diego Ramirez would leave the country."  In any event, it is another conclusory allegation;

d.   ¶49 of the Amended Complaint fails to explain whether this occurred when Diego Ramirez was away, or the frequency of these occurrences.  Moreover, this allegation fails to describe any supervision or control;

e.   ¶50 fails to establish employer status.  It is reasonable for building owners to be consulted in connection with building projects/plans, and the purchasing of materials or tools.  It does not mean that the Building Defendants or Kasovitz Defendants are employers;

f.   ¶51 is a hearsay allegation, and fails to demonstrate that the Kasovitz Defendants or Building Defendants had any authority to "hire and fire";

g.   ¶¶52 and 53 contain nothing more than hearsay allegations, and fail to demonstrate that the Kasovitz Defendants or Building Defendants determined the rate of pay. In fact these purported examples contain no interaction between Plaintiffs, or the Building Defendants and/or the Kasovitz Defendants;

h.   ¶54 demonstrates that it was Diego Ramirez/Jam Maintenance that controlled rate of pay, not the Building Defendants or the Kasovitz Defendants.  See also ¶62, Amended Complaint.

In sum, the purported examples raised by Plaintiffs in their

-17-

Amended Complaint, fail to meet the <u>Carter</u> or <u>Zheng</u> tests and, taken together, demonstrate that the Building Defendants and Kasovitz Defendants were ***NOT*** employers of Plaintiffs.

Moreover, Plaintiffs' allegations in the Amended Complaint are nothing more than conclusory, boilerplate statements warranting the dismissal of the Amended Complaint (see <u>Yongfu Yang</u>, at 13-14 (where this Court held that "Plaintiffs' largely conclusory allegations and recitations of the four-factor <u>Carter</u> test are insufficient to survive the [d]efendants Rule 12(c) motion); <u>Chui-Fan Kwan v. Sahara Dreams Co. II Inc.</u>, No. 17 Civ. 4058, 2018 U.S. Dist. LEXIS 213782, 2018 WL 6655607, at 4 (S.D.N.Y. Dec. 19, 2018) (citation omitted) (indicating that "mere boilerplate allegations that an individual meets the various prongs of an economic reality test are insufficient to survive a motion to dismiss").

While Plaintiffs refer to the Building Defendants and Kasovitz Defendants as employers, state that these Defendants paid Plaintiffs or failed to pay Plaintiffs, these allegations similarly fail to meet the 4 prong <u>Carter</u> test. See <u>Xue Lian Lin v. Comprehensive Health Mgmt.</u> 2009 U.S. Dist. LEXIS 29779, 2009 WL 976835 (S.D.N.Y. April 9, 2009) (where the Court dismissed the action since plaintiffs alleged only that defendants "employed Plaintiffs" and "employed Plaintiffs within the meaning of the FLSA").

-18-

Plaintiffs also acknowledge that the 4th prong of the <u>Carter</u> test is absent by stating that "Defendants did not have a time tracking system in place to accurately record the hours worked by Plaintiffs" ¶91, Amended Complaint.

Plaintiffs' Amended Complaint also fails to meet the <u>Zheng</u> Functional Employment test. At the outset, Plaintiffs do not even allege all of the <u>Zheng</u> prongs. Moreover, as discussed more fully above, Plaintiffs' allegations are conclusory, boilerplate statements.

Plaintiffs similarly failed to meet the single integrated employer test since Plaintiffs make nothing more than conclusory allegations, and since Plaintiffs failed to even allege all the single integrated employer test criteria (¶¶66-85, Amended Complaint).

Moreover, there is no indication that Jam or Ramirez on the one hand share some nexus with the Building Defendants and Kasovits Defendants on the other, aside from the fact that Building Defendants hired Jam as a maintenance company.

Similarly, there are no allegations to support a finding that the Building Defendants or the Kasovitz Defendants were a single integrated employer.

In sum, Plaintiffs have failed to meet the <u>Carter</u> test, <u>Zheng</u> test, or the single integrated entity test, warranting dismissal of the Amended Complaint. The Amended Complaint failed to

sufficiently allege that Building Defendants and Kasovitz Defendants had the power to control Plaintiffs (See Zimnicki v. Krysiak Constr. Corp., 2022 U.S. Dist. LEXIS 166317, at 8 (E.D.N.Y. Sept. 14, 2022) where the Court stated that "[t]he operative question when analyzing who is an 'employer' under the FLSA is 'whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the 'economic reality' presented by the facts of each case.' Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999) (citing Carter v. Dutchess Cmty. College, 735 F.2d 8, 12 (2d Cir. 1984); Goldberg v. Whitaker House Coop., 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)").

Therefore, the Amended Complaint should be dismissed in its entirety.

## IV. THE AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST THE KASOVITZ DEFENDANTS SINCE PLAINTIFFS MAKE NOTHING MORE THAN CONCLUSORY ALLEGATIONS AGAINST THESE DEFENDANTS, THEREBY FAILING TO SATISFY THE CARTER TEST

In Sarit v. Westside Tomato, Inc., 2020 U.S. Dist. LEXIS 67074, 2020 WL 1891983 (S.D.N.Y. April 16, 2020), the Court laid out the analysis for the determination of employer status in connection with individual defendants as follows:

> To determine whether an individual defendant is an "employer" for purposes of the FLSA, courts look to "the 'economic reality' of an employment relationship" and, in doing so, consider four factors: 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d

Cir. 2013) (quoting <u>Barfield v. N.Y.C. Health & Hosps.</u>
<u>Corp.</u>, 537 F.3d 132, 142 (2d Cir. 2008) and <u>Carter v.</u>
<u>Dutchess Cmty. Coll.</u>, 735 F.2d 8, 12 (2d Cir. 1984)).

See also <u>Bravo v. Established Burger One LLC</u>, 2013 U.S. Dist. LEXIS
146237 at (S.D.N.Y. October 8, 2013).

The courts in the Second Circuit have also held that "[M]ere
boilerplate allegations that an individual meets the various prongs
of the economic reality test" are insufficient to survive a motion
to dismiss. <u>Diaz v. Consortium for Worker Educ., Inc.</u>, 2010 U.S.
Dist. LEXIS 107722, 2010 WL 3910280, at 4 (S.D.N.Y. Sept. 28,
2010).

As discussed at length above, Plaintiffs have failed to meet
the pleading requirements of <u>Carter</u> since the Amended Complaint
contains nothing more than boilerplate and conclusory allegations
in connection with the individual defendants, Robert Kasovitz and
Akiva Kasovitz.

Therefore, Plaintiffs' Amended Complaint should be dismissed.

**V.  PLAINTIFFS NYLL CLAIMS SHOULD ALSO BE DISMISSED FOR
FAILURE TO STATE A CLAIM SINCE: A) THE ANALYSIS THAT
APPLIES TO THE FLSA CLAIMS ALSO APPLIES TO THE NYLL
CLAIMS; AND B) THIS COURT SHOULD DECLINE SUPPLEMENTAL
JURISDICTION OVER THE NYLL CLAIMS IN LIGHT OF THE FACT
THAT THE FLSA CLAIMS ARE SUBJECT TO DISMISSAL.**

The analysis in connection with Plaintiffs' FLSA claims also
applies to Plaintiffs' NYLL claims. <u>Xue Lian Lin v. Comprehensive</u>
<u>Health Mgmt., Inc.</u>, 2009 U.S. Dist. LEXIS 29779, 2009 WL 976835, at
2 (S.D.N.Y. Apr. 9, 2009) (citing <u>Cannon v. Douglas Elliman, LLC</u>,
2007 U.S. Dist. LEXIS 91139, 2007 WL 4358456, at 4 (S.D.N.Y. Dec.

10, 2007)).  Therefore, Plaintiffs' NYLL and FLSA claims should be dismissed, since, as demonstrated above, Plaintiffs make nothing more than boilerplate, conclusory allegations against the Building Defendants and the Kasovitz Defendants.

Moreover, much like in <u>Yongfu Yang</u>, since "all of Plaintiffs' federal claims have been dismissed, the Court [should decline] to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims." <u>Yongfu Yang</u>, at <u>15</u>.

**VI.  THIS ACTION SHOULD BE DISMISSED PURSUANT TO FRCP RULE 12(b)(2), (4) and (5), SINCE PLAINTIFFS FAILED TO SERVE THE KASOVITZ DEFENDANTS BY THE SEPTEMBER 16, 2022 <u>DEADLINE SET BY THIS COURT</u>**

On or about September 2, 2022 this Court extended Plaintiffs' time to serve the Kasovitz Defendants until September 16, 2022 (See Docket No. 35).  Subsequently, on September 21, 2022, this Court directed via the Docket that:

> ORDER: PER THIS COURTS ORDER ON SEPTEMBER 2, 2022, PLAINTIFFS WERE DIRECTED TO SERVE THE REMAINING DEFENDANTS IN THIS MATTER BY SEPTEMBER 16, 2022. PLAINTIFFS HAVE FAILED TO DO SO. PLAINTIFFS SHALL FILE A STATUS UPDATE BY SEPTEMBER 26, 2022 ADVISING THE COURT AS TO WHY THEY HAVE FAILED TO SERVE THE REMAINING DEFENDANTS, OR IF THEY HAVE BEEN SERVED, WHEN AND IN WHAT MANNER SUCH SERVICE WAS MADE. IF PLAINTIFFS FAIL TO DO SO, THE COURT WILL TERMINATE THE ACTIONS AGAINST DEFENDANTS ROBERT KASZOVITZ, AKIVA KASZOVITZ, AND DEIGO RAMIREZ. SO ORDERED. (HEREBY ORDERED by Judge J. Paul Oetken) (Text Only Order) (aa) (Entered: 09/21/2022)

As can be seen from the affidavits of service (Exhibit 2, Binson Declaration), nail and mail was not effectuated on the Kasovitz Defendants until September 19, 2022.

-22-

Therefore, the action should be dismissed as against the Kasovitz Defendants.

## VII. THE BUILDING DEFENDANTS' AND KASOVITZ DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AND THE AMENDED COMPLAINT SHOULD DISMISSED IN ITS ENTIRETY

As can be seen from the February 6, 2023 Declaration of Robert Kasovitz (the "Kasovitz Declaration"):

> 3. Each Building Defendant hired Jam Maintenance LLC ("Jam") to handle maintenance at their respective building.  Plaintiffs were employed and paid by Jam.

> 4.   Akiva Kasovitz and I (the "Kasovitz Defendants"), and Building Defendants, did not employ Plaintiffs, did not have the power to hire or fire Plaintiffs, and did not exercise such authority over Plaintiffs.

> 5.   The Building Defendants and the Kasovitz Defendants did not supervise or control Plaintiffs' schedules or control Plaintiffs' employment conditions.  Building Defendants and Kasovitz Defendants did not set Plaintiffs' rate or method of payment, nor did they have such authority.

> 6.   Jam was responsible for the foregoing since Jam was Plaintiffs' employer.  Plaintiffs were not Building Defendants' or Kasovitz Defendants' employees; Plaintiffs were Jams' employees.

> 7.   Moreover, there is no interrelation of operations or centralized control of labor relations between any Building Defendant or Kasovitz Defendants on the one hand or Jam or Diego Ramirez on the other; Defendant Buildings are building owners and Jam is an independent maintenance company, and they are separate and apart.  Building Defendants and Kasovitz Defendants do not share management with Jam.  Neither Building Defendants nor Kasovitz Defendants has any ownership or financial interest in, or control over, Jam or Diego Ramirez; Neither Jam nor Diego Ramirez has any ownership or financial interest in, or control over, Building Defendants or Kasovitz Defendants.

Kasovitz Declaration, ¶¶3-7.

In light of the foregoing, Plaintiffs' Amended Complaint should be dismissed in its entirety.

## **CONCLUSION**

For the reasons stated above, it is respectfully requested that the Building Defendants' and the Kasovitz Defendants' motion to dismiss the Amended Complaint, or in the alternative, for summary judgment in favor of these Defendants, be granted in its entirety.

Dated:    Woodmere, New York
          February 6, 2023

                              Respectfully submitted,

                              Law Office of David Binson

                    By:    _____**/S/ DAVID BINSON**_____
                           David Binson, Esq.(DB-4602)
                           Law Office of David Binson
                           1060 Quentin Place
                           Woodmere, NY 11598
                           Tel: (917) 386-3071
                           Fax: (212) 257-7032
                           Email: dbinson@binsonlaw.com

                           Attorney for Defendants
                           1165 Gerard Realty LLC, 1170
                           Gerard Realty LLC, Beauty
                           Realty LLC, Sagamore Realty
                           LLC, Prospect 2000 Realty LLC,
                           Robert Kaszovitz and Akiva
                           Kaszovitz